# FREEMAN, NOOTER & GINSBERG
## ATTORNEYS AT LAW

LOUIS M. FREEMAN  
THOMAS H. NOOTER*  
LEE A. GINSBERG  

75 MAIDEN LANE  
SUITE 907  
NEW YORK, N.Y. 10038  

(212) 608 0808  
Cell: (917) 847 1361  

*NY AND CALIF. BARS

April 30, 2025

**TO BE FILED UNDER SEAL**

The Honorable Joan M. Azrack  
United States District Judge  
Eastern District of New York  
100 Federal Plaza  
Central Islip, New York 11722  

RE: <u>United States v. Vladimir Antonio Arevalo-Chavez  
Criminal Docket No. 22-429 (JMA)</u>

Dear Judge Azrack:

    I am writing this letter to respectfully request an opportunity to briefly respond to the Government's submission today of their opposition to our applications with respect to the motion to dismiss the indictment. Because Mr. Freeman is not available today I am making this request on behalf of both of us and, of course, on behalf of our client. Because the issues raised are novel and important I respectfully ask that the Court grant this additional surreply to clarify a few points.

    First, I want to apologize to the Government and the Court about the fact that as I drafted a portion of our prior submission I was unaware that the Government had responded to Mr. Freeman's requests with respect to what charges were pending against our client in El Salvador. I now see that they did respond, and that there are charges pending. Nevertheless we fear that he will not receive due process either in his manner of pre-trial custody or in the courts in El

-1-

Salvador for several reasons.[1]

It appears now, through reporting in the press, that the reason the Government has been moving to dismiss the indictments against alleged MS-13 members and leaders is that there is some sort of arrangement between the President of El Salvador and the President of the United States (or at least his Administration) to return these alleged MS-13 gang members to El Salvador in return for an agreement by President Nayib Bukele of El Salvador to receive and incarcerate U.S. deportees from countries other than El Salvador without providing them with their full due process rights. The reporting shows is that there is some evidence that Bukele, when he was running for President of El Salvador in 2019 on a "law and order" platform of reigning in MS-13 and other gangs, was actually involved in a secret negotiation with the gang leaders to have them reduce their level of violence in return for receiving several benefits (such as less stringent conditions of incarceration for members who were charged with crimes there and were incarcerated), and that public knowledge of this secret negotiation is a political liability for Bukele that he wished to silence by taking control of those gang leaders before this fact would become public in trials in the United States. If that is correct, it suggests that there is no real intention to provide trials to the alleged gang leaders who have knowledge of the secret negotiations.

This was discussed in some detail in the *New Yorker* article cited in our moving papers, "The Terrorism Suspect Trump Sent Back to Bukele," (about Cesar Humberto Lopez Larios), dated April 18, 2025. This reporting is corroborated by an article in the online edition of today's *New York Times* entitled "Beyond Trump's Deal to Deport Venezuelans to El Salvador's Most Feared Prison," (April 30, 2025), which states,

"For months, aides to Mr. Trump had worked to engineer a new

---

[1] Cf., from El Paiz (international Spanish-language newspaper)" "Inmates in El Salvador Tortured and Strangled," by Brian Avelar, May 29, 2023:
https://english.elpais.com/international/2023-05-29/inmates-in-el-salvador-tortured-and-strangled-a-report-denounces-hellish-conditions-in-bukeles-prisons.html
See also, Press Release from the Inter-American Court on Human Rights (part of the Organization of American States ("OAS"): Full Report:
https://www.oas.org/en/iachr/reports/pdfs/2024/Report_StateEmergencyHumanRights_ElSalvador%20(1).pdf . Press release:
https://www.oas.org/en/iachr/jsForm/?File=/en/iachr/media_center/preleases/2024/207.asp

system to deport immigrants rapidly to Central and South America, <u>with little to no oversight from the courts</u>. ... In Mr. Bukele, the White House had a willing ally, albeit one with specific demands, including a list of high-ranking MS-13 gang leaders he wanted sent back to El Salvador as part of the deal. <u>Id</u>. [Emphasis added.]

I raise this in opposition to the Government's assertion that there is no "bad faith," similar to that found by Judge Ho in the Eric Adams case[2] in the Southern District, when in fact, the "geopolitical and national security concerns" appear to be an effort by the Government to support a "deal" with El Salvador to assist Bukele in suppressing the truth about a secret negotiation he had with MS-13 leaders in return for our government using El Salvador prisons, including the infamous "CECOT" terrorism prison, for removal of gang members without giving them due process of law (principally by using a tortured interpretation of the Alien Enemies Act of 1798).

This appearance of bad faith – that is, making a "geopolitical" agreement designed to deprive alleged gang members and others of their due process rights under our laws, supplements the bad faith shown by the Government's lack of concern that the motion to dismiss will result in our client being sent to a prison which is notorious for its deprivation of basic legal rights (such as access to counsel and to families) and likely torture, which violates our country's obligations under Article III of the *United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment*, Dec.10 1984, 1465 U.N.T.S. 85 , and the Immigration and Nationality Act, 8 U.S.C. § 1101, 1158, 1231(b)(3), and 8 CFR § 208.16 and 8 CFR § 208.18. There are numerous reports in the press and by Human Rights organizations documenting the kinds of torture that occur in El Salvador's "terrorism" prison, CEPOT, which will be referenced in any immigration proceeding against our client.

The second part of our application, the request to delay entry of a dismissal order, is simply designed to give us sufficient time to file a writ of habeas corpus in order to make sure our client is put into immigration proceedings so that he can assert his claims pursuant to the Convention Against Torture and the Immigration and Nationality Act. We cited (and provided a copy of) the order issued by

---

[2]*United States v. Eric Adams*, S.D.N.Y. Docket No. 24 Cr. 556 (DEH), decision April 2, 2025.

Magistrate Judge William Fitzpatrick of the Eastern District of Virginia to show that the request made in that case for a similar delay of entry of the dismissal order (which was fully litigated) was, <u>in effect</u>, granted, even though the order first states that the motion to delay "entry" of the dismissal order is denied. Instead the Judge "STAYED" entry of the order. This is all we are asking for here.

I would note that in that case, from the press reports surrounding it and the papers filed by the parties, there was no issue of whether that defendant was going to be put into immigration proceedings because the Attorney General stated that he would be[3], and therefore the stay of three days (from April 15th to April 18th) and the order directing that the defendant remain in the custody of the U.S. Marshal and "may not" be transferred to the custody of the Department of Homeland Security (ie., immigration), was also granted for the three days.

In our case we have no assurance that our client will be transferred to custody of the Department of Homeland Security or provided with an opportunity to file an application for withholding of removal pursuant to the Torture Convention, and thus we requested a few more days than the three days granted in the Virginia case. We are aware that in the case of Cesar Lopez Larios he was removed within 24 hours of the entry of the dismissal order and are fairly certain he never saw an immigration judge.

For that reason we seek the brief delay of either the "entry" of the order or that the order be stayed and our client be held in place in BOP custody in New York so that we can enter an appropriately drafted petition for a writ of habeas corpus.

Thank you so much for the Court's attention to this.

         Sincerely,

         <u>/s/ Thomas H. Nooter</u>
         THOMAS H. NOOTER
         Co-counsel for Defendant.

cc:  Office of the United States Attorney, by email.

---

[3] "In a statement, Bondi called him a "terrorist" and said "he will now face the removal process. ...: *Associated Press* report by By Alanna Durkin Richer, April 10, 2025.