```
                                                                    1

                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF NEW YORK


       --------------------------------X
       UNITED STATES OF AMERICA,
                                       :    22-cr-429
                                            (JMA)
            -against-                  :    United States Courthouse
                                            Central Islip, New York
       VLADIMIR AREVALO-CHAVEZ,
                                       :    July 24, 2025
                        Defendant.          11 a.m.
       --------------------------------X

                       TRANSCRIPT OF STATUS CONFERENCE
                   BEFORE THE HONORABLE JOAN M. AZRACK
                     UNITED STATES DISTRICT COURT JUDGE


       APPEARANCES:

       For the Government:       JOSEPH NOCELLA, ESQ.
                                 UNITED STATES ATTORNEY
                                    BY: JOHN DURHAM, AUSA
                                        JUSTINA GERACI, AUSA
                                        PAUL SCOTTI, AUSA
                                 100 Federal Plaza
                                 Central Islip, New York 11722


       For the Defendant:        LOUIS FREEMAN, ESQ.
                                 THOMAS NOOTER, ESQ.
                                 Freeman Nooter & Ginsberg
                                 75 Maiden Lane, Ste. 907
                                 New York, NY 10038



       Official Court Reporter:  Paul J. Lombardi, RMR, FCRR
       Ph. (631) 712-6106        100 Federal Plaza - Suite 570
                                 Central Islip, New York 11722


                 Proceedings recorded by mechanical stenography.
                         Transcript produced by CAT.


                         Paul J. Lombardi, RMR, FCRR
                           US District Court Reporter
```

2

1    THE CLERK: Calling criminal case 22-429, United
2   States of America versus Vladimir Arevalo-Chavez.
3    Counsel please state your appearances for the
4   record.
5    MR. DURHAM: John Durham, Justina Geraci and
6   Paul Scotti for the United States. Good morning, your
7   Honor.
8    THE COURT: Good morning.
9    MR. FREEMAN: Good morning, your Honor. Louis
10  Freeman and Thomas Nooter for Mr. Arevalo-Chavez.
11   THE COURT: Good morning, Mr. Freeman,
12  Mr. Nooter, and Mr. Arevalo-Chavez.
13   THE DEFENDANT: Good morning.
14   THE COURT: So you have all received my July
15  16th decision concerning unsealing and I put this matter
16  on today because I want to raise several issues with the
17  parties.
18   First, Mr. Freeman, in March 2023 your client
19  pled not guilty to all of the charges in the indictment.
20  I assume that there has been no change in his plea as to
21  any of the charges.
22   MR. FREEMAN: Your Honor, I understand from your
23  deputy that you prefer if we sit.
24   THE COURT: Yes, so you can use the microphone.
25   MR. FREEMAN: I'm going to sit.

1           THE COURT:  Yes.

2           MR. FREEMAN:  His plea of not guilty is the same

3   plea today as it was in March.

4           THE COURT:  And to the prosecution, as I

5   stressed in my July 16th decision, the government has

6   brought very serious charges against the defendant and his

7   codefendants who are alleged to be leaders of MS-13.

8           The crimes alleged here have had grave

9   consequences in this district and across the

10  United States.  One very important concern for this court

11  is preserving the integrity of this criminal case.  In its

12  April 30th and June 23rd letters the government raised the

13  prospect that the defendant might prevail on his

14  immigration claims which could preclude his deportation to

15  El Salvador.  As such, the government has asserted that I

16  should dismiss the indictment without prejudice so that

17  the government could reinstate the charges in the

18  indictment if the defendant cannot be removed to

19  El Salvador.  In my view this raises some issues.  Even if

20  the indictment were dismissed without prejudice, the

21  government couldn't simply reinstate the charges.  The

22  government would have to go to a grand jury and obtain a

23  new indictment that is timely under the statute of

24  limitations.

25          So I think that we are doing this backwards.

4

1  Why doesn't the government address the defendant's
2  immigration claims first, put the defendant through
3  whatever immigration proceedings the law requires.  If the
4  defendant prevails, and can't be removed to El Salvador,
5  then the motion to dismiss would be moot and the criminal
6  case can go to trial.
7           On the other hand, if the government prevails,
8  and can remove the defendant to El Salvador, then the
9  motion to dismiss would be ripe for a decision.  This all
10 leads to the following questions:
11          Why doesn't the government address the
12 defendant's immigration claims first?  Why would the
13 government want to disturb this indictment and dismiss
14 these very serious charges when we don't even know if the
15 defendant can be removed to El Salvador?
16          I'm happy to hear from you today on this.  But I
17 also want you to take some time and consider my questions
18 and the issues that they raise and I'm going to ask for a
19 formal submission from the government and the defense and
20 I'll give you dates later.
21          MR. DURHAM:  Would you like me to address that
22 point, your Honor?
23          THE COURT:  To the extent you can.
24          But, as I said, I'm going to want an additional
25 submission because I want a little more consideration.

5

1         MR. DURHAM:  Thank you, your Honor.  We
2  appreciate the opportunity to be heard in writing.
3         I will just say briefly, though, at this point
4  there is nothing for the government to respond to in the
5  immigration context.  At least as far as we are aware
6  nothing has been filed by the defense in immigration
7  court.  So there isn't a pending matter for us to respond
8  to to address that.  I know in some of their papers they
9  alluded to the fact they would file a 2255 --
10        THE COURT:  I'm saying stay this and then he
11 gets to go through immigration court and go through the
12 procedure there.
13        It wouldn't require you to do anything at this
14 point other than see what happens in immigration court.
15 But, go ahead.  Finish your thought.  That's it?
16        MR. DURHAM:  I'm just trying to think through
17 the logistics of that and we can address it in writing.
18        As of now he is being held by the United States
19 Marshals pursuant to this court's authority.  He can't be
20 moved to immigration court to address those proceedings
21 while he's still in their custody.
22        THE COURT:  But he may be able to initiate
23 something.  I gave my reasons, which is, if he's found to
24 not be removable there is no reason for me to entertain
25 the motion.

6

        I also wanted to discuss with you another case from this district where the government sought to dismiss charges so that it could deport a defendant to a foreign country to face investigation and prosecution there.  I know you are aware in the United States versus Salvador Cienfuegos Zepeda, 19-cr-366, where the government charged the Secretary of National Defense in Mexico with drug trafficking crimes stemming from his alleged involvement with a drug cartel.  The government eventually sought to dismiss the charges against the defendant so Mexico could proceed first with investigating and potentially prosecuting the defendant under Mexican law.

        But in that case the defendant had signed a removal agreement in which he waived any rights he might have had to relief or protection from removal under the INA or the Convention Against Torture.  In that case it was clear that the defendant would be removed to Mexico which justified granting the government's motion to dismiss.

        Mr. Arevalo-Chavez's case is in a much different procedural posture.  Doesn't that approach taken by your office in the Zepeda case support addressing Mr. Arevalo-Chavez's immigration claims first?  And, once again, I'll give you a chance to investigate it, discuss it with your office, and you can respond formally with a

1  submission because I'm going to want a submission.  But I
2  want to put that out there and I want you to address it.
3              MR. DURHAM:  Okay.  We'll address that in
4  writing, your Honor.
5              THE COURT:  The next matter I wanted to raise is
6  that both parties have filed letters in this case which
7  referenced the Villatoro Santos case, which is in the
8  Eastern District of Virginia and, as I'm sure you know, in
9  the Villatoro Santos criminal case the court granted the
10 government's motion to dismiss the case against him.
11             Mr. Villatoro Santos subsequently filed a habeas
12 petition.  I note that almost all of the filings in that
13 habeas case are not accessible to this court or to the
14 public.  But there is a notice on the public docket
15 indicating that the government served Mr. Villatoro Santos
16 with a notice to appear at an immigration hearing on June
17 3rd and that action appears to have led to the withdrawal
18 of his habeas petition.  According to the ICE website,
19 Mr. Villatoro Santos is still in ICE custody.
20             Do you know the status of that immigration
21 proceeding?
22             MR. DURHAM:  No, your Honor, but we can find
23 that out.
24             THE COURT:  All right.
25             I want the government to provide copies of the

8

1 filings in that habeas action which, as I said, are not on
2 the public docket. If necessary, you can submit those
3 documents under seal. The docket doesn't indicate why
4 those filings are not accessible to the public or the
5 court.
6       MR. NOOTER: Your Honor, I can't add very much
7 to it but I have spoken to the lawyer who represented
8 Mr. Villatoro Santos in the federal court and he said the
9 habeas petition was withdrawn because he did agree to send
10 the case to immigration court where it is pending, but
11 with another lawyer.
12       So he didn't know the status.
13       THE COURT: Okay.
14       MR. NOOTER: -- of the immigration proceeding.
15       THE COURT: All right.
16       MR. NOOTER: Naturally it's in our interest to
17 make sure that his immigration rights can be adjudicated,
18 whether before or after or whatever.
19       THE COURT: All right.
20       I am aware that there are procedures that do
21 permit the government to initiate immigration proceedings
22 while a defendant is in criminal custody. It doesn't
23 happen every day but I know that it does exist. We'll let
24 the government address that.
25       MR. NOOTER: That's true, actually.

9

1      I have represented a lot of people who, while
2  serving their federal sentence, had an immigration
3  proceeding.
4      THE COURT:  As I said, at the end I'm going to
5  give you dates for submissions because I'd like it really
6  fleshed out a bit.
7      Lastly, another thing I wanted to address is
8  some recent developments in related matters that occurred,
9  even after I scheduled this conference.  As outlined in my
10 July 16th decision, press reports indicated that there was
11 a link between El Salvador's request for the alleged
12 leaders of MS-13 in US custody, and the Venezuelans who
13 were sent to El Salvador on March 15th who the government
14 alleged were members of Tren de Aragua.  According to one
15 press report, an email sent between the United States and
16 Salvadoran officials indicated that El Salvador had
17 requested the deportation of nine specific MS-13 members
18 and that, upon the return of these individuals,
19 El Salvador would provide the US Government a 50 percent
20 discount for the cost of housing these Venezuelans for
21 year two of their confinement in El Salvador.
22     Mr. Arevalo-Chavez appears to be one of the
23 individuals who El Salvador specifically requested.
24 According to news reports last Friday these Venezuelans
25 who were imprisoned in El Salvador were sent back to

1  Venezuela.  The alleged arrangement to trade nine MS-13
2  defendants for a 50-percent discount raises a number of
3  questions in my view about the propriety and merits of
4  this reported deal.  For one thing, why would the
5  United States trade nine defendants who are alleged to be
6  high-level members of MS-13 for $3 million?  Is that a
7  good deal for the United States?
8         But I note that entire arrangement now appears
9  to be moot since these Venezuelans were shipped to El
10 Salvador.  So, in light of last week's developments, is
11 the government still seeking to dismiss the charges here
12 in order to send this defendant to El Salvador?  And, if
13 so, why?
14         MR. DURHAM:  Your Honor, we'd like to address
15 that in writing, if the court is amenable to it.
16         THE COURT:  I am.
17         MR. DURHAM:  Obviously there are a lot of
18 government organizations, leadership within our office, as
19 well as the Department of Justice who are going to be
20 involved in what position we take on that issue.
21         THE COURT:  I appreciate that.
22         Finally, Mr. Freeman, your April 23rd letter
23 indicated you were seeking discovery.  I would like you to
24 submit a letter identifying the specific discovery that
25 you are seeking and please explain to me in the letter why

11

1   you are entitled to that discovery and, of course, the
2   government can file a response.  I'll give you dates in an
3   order I will issue after today's conference.
4               Finally, we did receive a letter from your
5   client, Mr. Freeman.
6               MR. FREEMAN:  Your Honor, it's my understanding,
7   I have seen the letter, and we have no objection if it is
8   served -- well, it can be handed over by the court to the
9   government or we would provide a copy.
10              We do not object to the public filing.
11              THE COURT:  That's what I wanted to know.
12              It will be publicly filed.
13              MR. FREEMAN:  Yes.
14              THE COURT:  I'm going to issue an order today
15  that will give you dates for these submissions.
16              MR. FREEMAN:  Your Honor, can I have a moment,
17  please?
18              THE COURT:  Yes, yes.
19              (There was a pause in the proceedings.)
20              MR. FREEMAN:  Your Honor, may I address the
21  court now?
22              THE COURT:  Yes.
23              MR. FREEMAN:  We would like your Honor to
24  continue the order that you issued and I don't have the
25  date, but you will recognize the order by its contents.

12

1          The order says that my client will not be
2  removed from the MDC without notice to the court, and we
3  would ask that you continue that order.  I think the way
4  it reads it's indefinite but out of an excess of caution
5  we would like to ask you to issue it again or to make sure
6  that it remains in full force and effect.
7          THE COURT:  I will.
8          Anything else?
9          MR. FREEMAN:  I think that's it.
10         THE COURT:  Mr. Durham?
11         MR. DURHAM:  Just for the record, your Honor, I
12 believe that's in reference to the court's April 4th, 2025
13 order.
14         THE COURT:  All right.
15         Do you have any objection to that order?
16         MR. DURHAM:  We do not, your Honor.
17         That order is in place.  We have instructed
18 others they must abide by it.
19         THE COURT:  All right.
20         Anything else, Mr. Durham?
21         MR. DURHAM:  No, your Honor.
22         THE COURT:  Thank you, everyone.
23         (The matter concluded.)
24
25