# FREEMAN, NOOTER & GINSBERG
### ATTORNEYS AT LAW

LOUIS M. FREEMAN  
THOMAS H. NOOTER*  
LEE A. GINSBERG

75 MAIDEN LANE  
SUITE 907  
NEW YORK, N.Y. 10038

*NY AND CALIF. BARS

(212) 608-0808  
Cell: (917) 847-1361

August 15, 2025

The Honorable Joan M. Azrack  
United States District Judge  
Eastern District of New York  
100 Federal Plaza  
Central Islip, New York 11722

RE:      United States v. Vladimir Antonio Arevalo-Chavez  
         Criminal Docket No. 22-429 (JMA)

Dear Judge Azrack:

      We are writing to respectfully respond to the submission by the Government dated August 8, 2025 in which they responded to several questions put by the Court to them at our status conference on July 24, 2205.

      First, with respect to whether immigration court proceedings can be conducted prior to the final adjudication in the criminal case, we have no reason to doubt that there is no special program for doing that, as stated in the attachment to the letter (Statement of Nenad Vuckovic from ICE/DHS). However it would seem that the reason for that is that it would be hard to know whether a non-citizen in criminal proceedings would be removable, or on what basis he/she might be removable, without knowing whether they would be convicted and what the sentence would be (some bases for removal and defenses against removal depend on the length of the sentence imposed). Here, where the basis of removal would not have anything to do with a a conviction (because the case would be dismissed), but rather, the fact that our client was "paroled into the United States solely for the purpose of criminal prosecution" (and therefore has no other facially-available basis for remaining here) it would seem that if the defendant consented (and he would) and the government proceeded with the expedited

-1-

removal procedures for an individual who was paroled into the United States for prosecution, knowing that he will not be prosecuted, we see no reason why the government would not be able to proceed prior to the dismissal in order to obtain a final order of removal which would be executable upon dismissal of the indictment.

Second, the Court asked the Government to provide documents related to the case of Henrry Josue Villatoro Santos in the Eastern District of Virginia. We would note that we cited that case as a precedent for delaying the effectuation of a dismissal order long enough for our client to be able to lodge an objection to being removed to El Salvador under the protections of our immigration laws and Article III of the *United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment*, Dec.10 1984, 1465 U.N.T.S. 85 , and the Immigration and Nationality Act, 8 U.S.C. § 1101, 1158, 1231(b)(3), and 8 CFR § 208.16 and § 208.18.

We would like the Court to take note, however, that the immigration status of Mr. Villatoro Santos was different from that of our client. As the papers from the Villatoro case provided by the Government show Mr. Villatoro has already been adjudicated in immigration court proceedings and won the right to adjust status as a Special Immigrant Juvenile. In order to remove him the government would have to have followed the procedures available to immigrants who have some sort of status here (either entered "with inspection," or with a tourist or some other kind of visa, etc.), see 8 U.S.C. § 1229a which describes the primary process through which the Government removes non-citizens from the United States. It specifies that "[u]nless otherwise specified in this chapter, a proceeding under this section *shall be the sole and exclusive procedure* for determining whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3) (emphasis added). One of the above-noted exceptions is for people who are subject to "expedited removal for having come to the border seeking admission, See 8 U.S.C. § 1225.

Mr. Villatoro clearly satisfied the requirements for the removal procedures described in 8 U.S.C. § 1229a, whereas it is more likely that Mr. Arevalo-Chavez fits the requirements of 8 U.S.C. § 1225 (although he did not willingly present himself at a border seeking admission) because he was only "paroled into the United States" (as noted in the statement by Nenad Vuckovic. Thus the

presumption was that Mr. Villatoro would be put into removal proceedings by the issuance of a Notice to Appear, and in such proceedings be given an opportunity to raise any challenge to removal or defense to removal – such as asylum and withholding of removal – before an immigration judge. Either side can appeal the decision of the Immigration Judge in such proceedings to the Board of Immigration Appeals located in Falls Church, Virginia. If the immigrant loses before the Board he/she can usually file a Petition for Review in the United States Circuit Court of Appeals for whichever Circuit covering the location of the immigration.

Mr. Villatoro nevertheless filed a writ of habeas corpus to make sure that he was not removed using the Alien Enemies Act (as had been used in other recent cases, notably with Venezuelans accused of being part of a street gang), and to be certain that the government would issue a Notice to Appear. When that happened the writ of habeas corpus was withdrawn.

As we described in our submission of June 13, 2025, the likelihood of Mr. Arevalo being issued a Notice to Appear and being sent to immigration court is much less solid. Just to repeat the outline of the procedure Mr. Arevalo would have to follow, it would begin with his making an assertion to ICE that he fears persecution or torture if he is returned to El Salvador.[1] Upon doing that Mr. Arevalo would be entitled initially to an interview and evaluation by an immigration officer. See 8 U.S.C. § 1225(b)(1)(A)(ii). If the asylum officer finds that there is a "significant possibility" that the non-citizen is entitled to relief the case is referred to an immigration judge for a full asylum or CAT-only hearing (with the issuance of a Notice to Appear). See 8 U.S.C. § 1225(b)(1)(A)(ii) and 8 C.F.R. §§ 208.16(a), (c)(4), 1240.17(f)(2)(i)(B), and 1208.30(g)(2)(iv)(B).  If the asylum officer finds that there is insufficient reason to believe that the non-citizen is entitled to relief, the case is still reviewed (in a more limited proceeding) by an immigration judge, who, if he or she overrules the determination of the asylum officer, will refer for a full asylum or CAT-only hearing in immigration court, and if not, will order removal. 8 C.F.R. §§ 208.14(c)(1), and 1240.17(a). Even then, the non-citizen has a right to request reconsideration by USCIS of the negative determination. 8 C.F.R. § 208.30(g)(1)(I).

---

[1] Our instructions to him about this probably resulted in the pro se letter to the Court that our client sent, which has been docketed as ECF #186.

It is not clear to us whether a denial of our client's request for relief by the Immigration Judge in the latter situation (i.e., where the asylum officer does not refer the case to the immigration court), but we expect that whatever the last negative ruling is by an administrative agency is – whether it is by the immigration court or by the asylum office – would be subject to a petition for review in the United States District Court by writ of habeas corpus on the ground that the ruling violates the terms of Article III of the Convention Against Torture.

We also bring to the Court's attention several recent changes and events in the application of the Convention Against Torture and the asylum laws general which have occurred in during the past few months. First, the U.S. Department of State just issued new "country conditions" human rights reports (the ones for 2024). These reports are automatically made part of the record of proceedings in immigration court for asylum and withholding cases and were considered to be highly authoritative on the human rights situation in each country for which a report is issued.

In our June 13th filing we quoted from the 2023 Country Conditions Report for El Salvador (which at that time was the most recent), which stated in the first "executive summary" that:

> "Significant human rights issues included credible reports of: unlawful or arbitrary killings; enforced disappearance; torture or cruel, inhuman, or degrading treatment or punishment by security forces; harsh and life-threatening prison conditions; arbitrary arrest or detention; serious problems with the independence of the judiciary ..." <u>2023 Country Reports on Human Rights Practices: El Salvador</u>, page 1.

The newly-released report for 2024, prepared by the State Department under the Trump Administration, replaces that language with the following:

> "There were no significant changes in the human rights situation in El Salvador during the year. Reports of gang violence remained at a historic low under the state of exception as mass arrests suppressed gang activity.

> "**There were no credible reports of significant human rights abuses**.
>
> "The government took credible steps to identify and punish officials who committed human rights abuses."  2024 Country Reports on Human Rights Practices: El Salvador, page 1. [Emphasis added.]

These claims of lack of human rights abuses in El Salvador are astounding given the reports (among many others) which we cited in our June 13th letter (various press reports) and later reports including information obtained from Kilmar Abrego Garcia after he was sent back to the United States and the 250 or so Venezuelans who were returned to Venezuela recently.

In addition to that there have been several decisions issued by the Board of Immigration Appeals during the first half of 2025 (after the Trump Administration took over the Justice Department) which have perverted the interpretation of violations of the Convention Against Torture. The Board is under the direct control of the Attorney General, and in three decisions in particular the Board seems to have bent to the political will of the Attorney General and President Trump in 1) changing the interpretations of "torture" itself and the levels of proof of showing that (as required under the CAT rules) "it is more likely than not" that an individual will be tortured if removed to a country like El Salvador, and 2) making the one which involved torture in El Salvador in the infamous CECOT prison a "precedent decision" even though the Respondent (the immigrant) was not represented by an attorney for the appeal. See *Matter of A-A-F-V-*, 29 I&N Dec. 118 (BIA 2025), footnote 1: "Pursuant to Order No. 6309-2025, dated June 30, 2025, the Attorney General designated the Board's decision in *Matter of A-A-F-V-* (BIA Jun. 6, 2025)[this case], as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2025)[Emphasis added].  Two other cases in which the interpretation of what an immigrant has to show to obtain withholding of removal pursuant to Article III of the Convention Against Torture are *Matter of A-A-R-,* 29 I&N Dec. 38 (BIA, April 22, 2025) and *Matter of S-S-*, 29 I&N Dec. 136 (BIA, June 16, 2025)(also designated a "precedent decision." In each of those decisions the Immigration Court had granted withholding or deferral of removal pursuant to CAT, and the government appealed to the Board (again, under the direct control of A.G. Bondi) and obtained a reversal of the decision with tortured interpretations of what the level of proof is that the respondents were

required to show (even though they had clearly satisfied the immigration judges in their respective cases).

All of that is to show that this Administration is bending the rule of law to support its political ("geopolitical," according to the prosecutors) ends of appeasing the President of El Salvador so it can continue to deport people to its prisons even if they never had any tie with El Salvador before they came to the United States. We fail to see the justification for turning our client over to the Salvadoran government and prison system "for prosecution" where he was already convicted and sentenced to 39 years imprisonment without due process and where the Salvadoran President clearly has a motive to silence our client (for the reasons previously discussed).

This Court has limited ability to ensure all that we seek with respect to ensuring our client's right to be heard in a neutral and fair forum on the obviously-strong risk that he will be tortured if returned to El Salvador. Nevertheless we urge the Court to grant our two requests – dismissal with prejudice and time to file a writ of habeas corpus and be heard on an emergency motion for a stay of removal – so that Mr. Arevalo has some chance of receiving justice.

Thank you.

Respectfully submitted,

 /s/ Louis M. Freeman
Louis M. Freeman

 /s/ Thomas H. Nooter
Thomas H. Nooter
Attorneys for Defendant Arevalo-Chavez